# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-1168-JDT-cgc |
| | ) | |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

Plaintiff Johnathan Williams, who is presently incarcerated at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 30, 2020. (ECF No. 1.) The complaint concerns events that occurred while Williams was previously incarcerated at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee. After Williams filed a signed motion to proceed *in forma pauperis*, the Court granted the motion and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) Williams names the Tennessee Department of Correction (TDOC) and Captain First Name Unknown Lanum as Defendants. (ECF No. 1 at PageID 2, 7.) He also attempts to sue four unidentified "John Doe" individuals.

In his complaint, Williams states that on June 8, 2020, at approximately 7:38 a.m., the four John Doe Defendants took him out of his cell and escorted him outside into a recreation cage.  (*Id.* at PageID 2.)  He alleges that at some point thereafter he was talking to another inmate "about Covid-19 an[d] our environment" when "all of a sudden" two of the unidentified Defendants approached and threatened him with "physical harm for exercising [F]irst Amendment rights—free speech."  (*Id.*)  Williams states he continued to speak and told the Defendants that threatening harm was a violation of human rights.  (*Id.*)  The Defendants called for two more officers and allegedly "entered the Plaintiff Williams rec cage punching and swinging on Plaintiff using excessive force . . . . Plaintiff was thrown to the ground kicked in the face a couple times caus[ing] Plaintiff to lose his teeth."  (*Id.* at PageID 3.)  Williams alleges he begged for the John Doe Defendants to stop; he asked them for medical attention, but his request for medical treatment was denied.  (*Id.*)  While bleeding from his mouth and face, he was picked up and carried to his cell where he was thrown inside, all while he screamed for help.  (*Id.*)  Williams further alleges the John Doe Defendants "punched, kicked[,] knocked Plaintiff unconscious an[d] [woke] him up with water.  After Defendant[s] heard other inmates screaming he can't breath[e]," the John Doe Defendants "zip tied Plaintiff[']s feet and hit Plaintiff on top of the head knocking [him] unconscious again this time with a flashlight."  (*Id.*)

Williams asserts he woke up minutes later "in so much pain" with his "feet still tied up and cell door wide open."  (*Id.*)  He alleges he crawled out of his cell at approximately 12:23 p.m. "looking for medical help but was quickly denied by Captain Lanum."  (*Id.*)  Williams states he was bleeding and his face was swollen from the assault.  (*Id.*)  He alleges

he suffered a "life changing event," and that his injuries included a loss of teeth, neck and back pain, deep cuts, knots in his skin, and permanent marks.  (*Id.*) at PageID 4.)  He seeks compensatory, punitive, and special damages.  (*Id.* at PageID 5.)

On September 9, 2020, Williams filed a motion for a temporary restraining order (TRO).  (ECF No. 8.)  He states that before he was transferred to the WTSP he "had done three [months] inside of the dry cell," which he asserts is for inmates with bad behavior problems.  (*Id.*)  Though it is not entirely clear, Williams appears to state that three John Doe individuals at the WTSP placed him in a dry cell upon his arrival at that facility even though he had not had any bad behavior problems since June 18, 2020.  (*Id.* at PageID 36 ("From [NWCX] to [WTSP] they placeing [sic] me right into a dry man cell.").)  Williams contends that inmates in the dry cell have no control over the lights and are unable to watch television because there are no electrical plugs.  He does not state the relief he seeks, but the Court presumes he is asking for an order directing WTSP officials to release him from the dry cell.

In determining whether to issue a TRO or emergency injunction, the Court must balance four factors:  (1) the movant's likelihood of success on the merits, (2) whether the movant will suffer irreparable injury without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest is best served by granting the injunction.  *See Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (citing *Northeast Ohio Coal for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006).

Williams fails to address any of these factors in his motion.  He does not, however, contend he is being harmed by placement in the dry cell; he complains only that he cannot control the lights or watch television.  Williams therefore cannot demonstrate a likelihood of success on the merits of a claim based on being housed in the dry cell.[1]  Moreover, granting a TRO merely because Williams finds the dry cell uncomfortable would disrupt the decision-making of the WTSP staff regarding inmate classification and housing assignments and would not serve the public interest.  Accordingly, the motion for a TRO is DENIED.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines

---

[1] To the extent Williams intended the motion for TRO also as an amendment to the complaint alleging such a claim, the allegations would fail to state a claim under either the Eighth or the Fourteenth Amendments.

4

whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Williams filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

5

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Williams's claims against the TDOC and any claims against the individual Defendants in their official capacities are treated as claims against Tennessee.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Williams, however, does not state a valid claim against the State of Tennessee.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court.  *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).  Tennessee has not waived its sovereign immunity and therefore may not be sued for damages.  *See* Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

6

Williams's claim against Defendant Lanum for failing to take Williams for medical care or to call on medical staff to attend him arises under the Eighth Amendment, which protects a convicted inmate from cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of a claim for lack of medical care, the objective component requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). In this case, Williams has sufficiently alleged he had an objectively serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods*

*v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

Here, Williams alleges that he "crawled out of his cell looking for medical help but was quickly denied by Captain Lanum." (ECF No. 1 at PageID 3.) Williams does not, however, allege how Lanum, who is not alleged to be a medical provider, would have known he was seriously injured. He does not state that Lanum witnessed the alleged assault. Though he allegedly asked Lanum for medical attention later the same day, Williams does not allege whether Lanum could see the extent of his injuries at that time or state what he told Lanum about those injuries. Williams thus has not sufficiently alleged

that Lanum *knew* of an excessive risk to Williams's health yet disregarded that risk.  He therefore fails to state a claim against Lanum for denial of medical care.

Williams's allegations against the John Doe Defendants are for excessive force. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'"  *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303).  The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Williams alleges the four John Doe Defendants brutally assaulted him merely for speaking his mind.  These allegations would be sufficient to state an Eighth Amendment claim of excessive force.  However, service of process cannot be made on unidentified parties, and the filing of a complaint against such unknown defendants does not toll the running of the statute of limitation.  *See Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548-49 (6th Cir. 2016) ("The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party." (*citing Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996))).  Before Williams can proceed against these unnamed individuals he must first

identify them[2] and re-allege his claims within the applicable one-year limitations period set out in Tennessee Code Annotated 28-3-104(a)(1)(B).

For the foregoing reasons, Williams's complaint is subject to dismissal for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, Williams must be given an opportunity to amend his complaint.

In conclusion, Williams's original complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii) and 1915A(b)(1). However, leave to file an amended complaint is GRANTED.

**Any amended complaint must be filed within twenty-one days after the date of this order, on or before November 20, 2020.** Williams is advised that an amended

---

[2] Williams asks the Court to find out the names of the unidentified Defendants "through counsel or T.D.O.C." (ECF No. 1 at PageID 4, 7.) It is not the responsibility of the Court, however, to identify the parties he wishes to sue.

10

complaint will replace the original complaint and must be complete in itself without reference to the prior pleading.  The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Williams fails to file an amended complaint within the time specified, the Court will dismiss this case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE